DAVIS & BRANDON v. SEABOARD AIR-LINE RAILWAY.

1. Under a proper construction of the petition, the suit in this case was not brought to recover damages for a breach of contract of carriage or for a breach of the common-law duty of a common carrier, but was based on sections 2771 and 2772 of the Code of 1910, which require common carriers, on application by a shipper, to trace freight which may have been lost, damaged, or destroyed, and to inform the applicant

in writing, within thirty days, of the time, place, and manner of the loss, damage, or destruction, and the names of the parties and their official position, if any, by whom such facts can be established, and which provide that, on failure to do so, the carrier shall be liable for the value of the freight lost, damaged, or destroyed, in the same manner and to the same extent as if said loss, damage, or destruction occurred on its own line.

2. In such an action, although the bill of lading stated that it was subject to the conditions on the face and back thereof, and was signed by the shipper as well as the agent of the carrier, and although one of the conditions on the back thereof was that no carrier should be liable for loss or damage not occurring on its portion of the route, it would not defeat a recovery to show that the initial carrier delivered the property in good order to the next connecting carrier, for transportation to its destination. Evidence to show such fact was inadmissible, over objection.

3. A bill of lading, which was signed both by the shipper and the agent of the carrier, contained on its face a statement that the property shipped was received subject to the conditions on the face and back of such bill. On the back of the bill, among the printed conditions, was the following: "Claims for loss or damage must be made in writing to the agent at the point of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property or after due time for the delivery thereof, no carrier hereunder shall be liable in any event." At the bottom of the conditions was printed the following: "N. B. All claims for loss or damage to freight, or for overcharge under this bill of lading, will be promptly investigated upon application to O. B. Bidwell Jr., freight claim agent, Portsmouth, Va., with original bill of lading and paid freight bill attached." An action was brought against the initial carrier, under Civil Code (1910), §§ 2771, 2772. *Held,* that the fact that the demand for tracing was made more than thirty days after the arrival of the goods at their destination did not authorize a nonsuit.

4. Where the plaintiff introduced evidence to show the market value of goods shipped at the point of shipment and also at the point of destination, and that they arrived in a damaged condition and were of less value than the market value at either place, but the presiding judge granted a nonsuit on the ground that he was not entitled to recover at all, a mere general statement in the bill of exceptions that, during the introduction of evidence by the plaintiff, the court "held" that under a provision in the bill of lading the measure of damages would be fixed with reference to the market value at the point of shipment rather than at the point of destination, without more, stated no such actual ruling or judgment as to invoke a decision of this court thereon.

MAY 11, 1911.

Action for damages. Before Judge Conyers. Camden superior court. April 5, 1910.

*R. D. Meader,* for plaintiffs.

*Crovatt & Whitfield,* for defendant.

LUMPKIN, J.   Davis & Brandon brought suit against the Seaboard Air-Line Railway, alleging, that they made a shipment of potatoes from a station on the line of the defendant to a point on the line of another connecting carrier; that demand was made upon the initial carrier to trace the freight and make a report to the shipper as provided by the statute; that there was a failure to comply with this demand, and that suit was brought accordingly against the defendant for the difference between the market value of the potatoes at the time and place when they should have been delivered and their value as delivered.   After both sides had closed their evidence, the defendant moved for the direction of a verdict in its favor.   The court declined to give such direction, but granted a nonsuit.   The plaintiffs excepted.

This was not an action for damages arising out of a breach of the contract of carriage or from a breach of the common-law duty resting upon the carrier.   It was distinctly an action based upon the statutory provisions contained in the Civil Code (1910), §§ 2771 and 2772.   In *McCall* v. *Central of Georgia Ry. Co.*, 120 *Ga.* 602, 605 (48 S. E. 157), it was said that the liability of a railroad company under these sections is not incidental to the transportation of the freight, springing out of the contract of affreightment, but is in the nature of a penalty, prescribing damages for non-compliance with a statutory duty; that the initial carrier may have performed its contract to carry and deliver the freight in good order to its connecting carrier; yet if the freight was delayed, damaged, or destroyed after leaving its possession, the refusal to trace and give the information required by the statute would give a cause of action against the initial carrier.   Following this ruling, a provision in the bill of lading, although the contract was signed by the shipper, to the effect that each carrier should only be liable for loss or damage occurring on its portion of the route did not furnish a defense to such action; nor was evidence admissible to show that in fact the carrier who failed to trace the freight, as required by the statute, had delivered the potatoes in good order to the connecting line.   Neither did the provision of the bill of lading that claims for loss or damage must be made in writing to the agent at the point of delivery promptly after arrival of the property, "and if delayed for more than thirty days after the delivery of the property or after due time for the delivery thereof,

no carrier hereunder shall be liable in any event," limit the right of the shipper to make demand upon the initial carrier to trace the freight in accordance with the statute. Even if it were otherwise, considering together the two statements contained in the printed conditions on the back of the bill of lading, which are quoted in the third headnote, it is not altogether certain as to what would be required of the shipper by one provision stating that a claim must be made for damages within thirty days upon the agent at the point of delivery, and a notice at the close of the printed conditions that all claims for loss or damage to freight would be promptly investigated upon application to the freight claim agent at Portsmouth, Virginia.

In view of what has been said, it will be seen that the presiding judge erred in granting a nonsuit. The granting of a nonsuit, after the close of the evidence introduced by both sides, and upon a motion for a direction of a verdict in favor of the defendant, was not altogether regular; but if a nonsuit were proper, this method of procedure would seem to furnish no ground for complaint on behalf of the plaintiff, who would only be cut off from proceeding with his case when he might have had a verdict directed finally barring him from suing again.

The plaintiff introduced evidence to show the market value of the potatoes at the place of shipment and also at the place of delivery. One of the printed conditions on the back of the bill of lading was that "The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based," etc. It was recited in the bill of exceptions that "the court held, during the introduction of the evidence for the plaintiffs," that under the terms of the bill of lading the measure of damages would be based upon the value of the potatoes at the point of shipment, rather than at the point of delivery; and to this exception was taken. Such a statement raises no question for decision by this court. There must be a concrete ruling or decision of some point or matter in the case, not a mere anticipatory announcement of the view of the judge, in order to furnish a subject-matter for exception. It does not appear that the judge excluded any evidence bearing on this

point or admitted any over objection, and that to such exclusion or admission exception was taken. He did not reach the point of charging the jury in the case. His grant of nonsuit was not based upon what would have been the extent of the plaintiffs' recovery, had there been one, but upon his opinion that they were not entitled to recover at all. It is thus evident that the so-called "ruling" was not in fact a decision of any question practically applying to the case, but must have been some general announcement of the views of the judge on that subject. Moot questions can not be brought to this court, but only actual rulings or decisions. We think it would be a bad precedent to have the decision of this court invoked upon mere theoretical questions instead of actual rulings affecting the trial as it took place. If this were permitted, bills of exceptions might be filled with statements of the general views and opinions of the presiding judge in the trial court, announced in an anticipatory way, which might never ripen into actual rulings. It is actual, not anticipated, error which forms a subject of correction by a court of review. We must therefore decline to pass upon the question on which it is thus sought to obtain a ruling of this court, and which evidently played no part in the grant of a nonsuit in the court below.

*Judgment reversed. All the Justices concur.*